### INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, Plaintiff,

v.

### R.W. AMRINE DRYWALL COMPANY, INC. et al., Defendants.

### Civil Action No. 02–00472(RMU).

United States District Court, District of Columbia.

Dec. 28, 2002.

---

28

Richard B. Sigmond, Sanford G. Rosenthal, Marc L. Gelman, Jennings Sigmond, Philadelphia, PA, for Plaintiff.

### MEMORANDUM OPINION

URBINA, District Judge.

GRANTING IN PART AND DENYING IN
PART THE PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT

### I. INTRODUCTION

This case is currently before the court on the plaintiff's motion for a default judgment in accordance with the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The plaintiff, the International Painters and Allied Trades Industry Pension Fund ("the Pension Fund"), is a multi-employer employee pension plan governed by ERISA. The defendants are R.W. Amrine Drywall Company and Robert Amrine, the owner of that company (collectively, "the defendants" or "the Company"). This action began after the Company entered into collective bargaining agreements with a labor union organization, the International Brotherhood of Painters and Allied Trades ("the Brotherhood"). Claiming that the defendants failed to comply with the collective bargaining agreements, the plaintiff initiated this action to enforce the terms of the agreements. For the following reasons, the court grants in part and denies in part the plaintiff's motion for default judgment.

### II. BACKGROUND

As noted, the Pension Fund is a multi-employer employee pension plan governed by ERISA. Montemore Decl. ¶ 2. The collective bargaining agreements between the Company and the Brotherhood authorize the Pension Fund to provide retirement income to the Company's employees who are represented by the Brotherhood ("Company employees"). *Id.* ¶ 4. Toward that end, the collective bargaining agreements require the defendants to submit monthly remittance reports to the Pension Fund describing the work performed by Company employees. *Id.* ¶ 5. The agreement further requires the Company to submit monthly contributions to the Pension Fund on behalf of the Company employees. *Id.* ¶ 4. If the Company fails to comply with the collective bargaining agreements, the Company must (1) submit to an audit of all records related to its obligations to the Pension Fund and (2) pay liquidated damages, late charges, in-

terest, audit costs, and attorney's fees and costs. Compl. at 3.

The defendants incurred a contribution delinquency to the Pension Fund when it failed to make the required contributions for the period from October 2000 through March 2001. Montemore Decl. ¶ 6. The defendants settled this delinquency by entering into a Promissory Note and Personal Guaranty, notarized on July 3, 2001, for the principal sum of $18,928.14. *Id.* Despite this settlement agreement, the company failed to submit timely all of the payments as required by the settlement. *Id.*

According to the plaintiff, the defendants continued to violate the collective bargaining agreements by failing to make Pension Fund contributions and failing to file remittance reports. *Id.* ¶ 12. On March 12, 2002, the plaintiff filed a complaint alleging these violations. In the complaint, the plaintiff alleges that the defendants failed to pay to the Pension Fund contributions "in at least the sum of $14,738.25." Compl. at 4. The plaintiff explains that it also seeks a judgment for any Pension Fund contributions the Company fails to make after the filing of the complaint. *Id.* at 4. The plaintiff, in the complaint, does not specify the timeframe for the already-delinquent payments, but states that the time period is "in a period not barred by any applicable statute of limitations." *Id.* at 7. In sum, the plaintiff requests monetary damages and injunctive relief, pursuant to ERISA, for violations of the collective bargaining agreements.

On April 5, 2002, counsel for the plaintiff executed service of the summons and complaint on the defendants. Return of Serv. filed on Apr. 18, 2002. The record reflects that the defendants have not filed an answer to the plaintiff's complaint. Consequently, the clerk of the court entered default for the plaintiff on July 17, 2002. Default.

On September 13, 2002, the plaintiff filed a motion for entry of default judgment in the amount of $18,900.23 and for injunctive relief. The damages requested in the motion are slightly different from those requested in the complaint because the Company continues to fail to contribute to the Pension Fund as required by the collective bargaining agreements.

Regarding monetary damages, the plaintiff first requests $10,854.86 for the "principal balance" (including unpaid contributions of $9,461.20) owed to the plaintiff pursuant to the July 3, 2001 settlement regarding the defendants' contribution delinquency for October 2000 through March 2001. Montemore Decl. ¶ 6. Second, the plaintiff argues for $1,919.30 for unpaid Pension Fund contributions for November 2001 through April 2002.[1] *Id.* ¶¶ 7–8. Third, the plaintiff moves for $258.29 in interest on the unpaid contributions set out in items (1) and (2), calculated in accordance with the Internal Revenue Service rate for delinquent taxes and pursuant to the Pension Fund's Rules and Regulations. *Id.* ¶ 9. Fourth, the plaintiff requests $2,554.83 in liquidated damages. *Id.* ¶ 10. Fifth, the plaintiff asks for $349.96 in late charges, in the form of interest on contributions that the defendants paid prior to this litigation and more than twenty days after the due date. *Id.* ¶ 11; Mot. for Default J. ¶ 5. Sixth, the plaintiff requests $2,962.99 in attorney's fees and costs. Sigmond Decl. dated Sept. 12, 2002; Mot. for Default J. Ex. 5.

---

1. As the Company failed to submit remittance reports for February through April 2002, the plaintiff has calculated the amount of these contributions using the average monthly contributions for the three previous months and subtracting any ineligible contributions.

The plaintiff also requests equitable and injunctive relief. Specifically, the plaintiff asks the court to order the defendants to cease their refusal to file complete and timely remittance reports in the future. Mot. for Default J. ¶¶ 7–8. The plaintiff also asks the court to order the defendants to file remittance reports for February through April 2002 and produce their payroll books and records from June 1999 to the present to allow the plaintiff to conduct an audit of these documents. *Id.* This audit is intended to determine whether the defendants owe further contributions to the Pension Fund. *Id.* The plaintiff argues that this injunctive relief is needed to prevent further irreparable harm to the Pension Fund. *Id.*

On October 16, 2002, the court issued an order instructing the defendants to show cause by October 31, 2002 as to why the court should not enter default judgment. The court instructed the defendants that "failure to respond to this order may result in the entry of default judgment in favor of the plaintiff." The deadline having come and gone, the defendants still have not responded to the court's show cause order.

### III. ANALYSIS

### A. Legal Standard for Default Judgment Pursuant to ERISA

█ Rule 55(a) of the Federal Rules of Civil Procedure provides for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED R. CIV. P. 55(a). Upon request of the plaintiff and an affidavit regarding the amount due, Rule 55(b) authorizes the clerk or court (depending on the circumstances) to enter against the defendant a default judgment for the amount claimed and costs. FED R. CIV. P. 55(b). Just as a

court can dismiss a case when faced with dilatory tactics by the plaintiff, a district court has the discretion to enter default judgment when a defendant fails to defend its case appropriately. *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n. 5 (D.C.Cir.1980).

█ A defaulting defendant is deemed to admit every well-pleaded allegation in the complaint. *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir.1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain. *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C.2001); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1364 n. 27 (11th Cir.1997); *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir.1975). Moving for a default judgment, the plaintiff must prove its entitlement to the requested damages. *Oberstar v. FDIC*, 987 F.2d 494, 505 n. 9 (8th Cir. 1993). In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir.1979). When the damages cannot be calculated with relative simplicity, however, the court may order an evidentiary hearing. *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F.Supp. 107, 111–12 (E.D.N.Y.1997). Finally, the movant is entitled to all reasonable inferences from the evidence offered. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981).

ERISA provides additional rules for default judgments. 29 U.S.C. § 1132(g)(2). By enacting Section 1132(g)(2), Congress intended to preserve the private multi-

employer pension plan system by ensuring that employers make the required contributions to the pension plans. *Iron Workers Dist. Council of West. New York, Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.,* 68 F.3d 1502, 1506 (2d Cir.1995). "The intent of this section is to promote the prompt payment of contributions and assist plans in recovering the costs incurred in connection with delinquencies." *Cent. States, Southeast & Southwest Areas Pension Fund v. Alco Express Co.,* 522 F.Supp. 919, 928 (E.D.Mich.1981) (citing to Senate legislative history).

■ When a court awards a default judgment against a defendant for contributions owed under a collective bargaining agreement, ERISA provides that the court must award: (1) the unpaid contributions; (2) interest on the unpaid contributions; [2] (3) liquidated damages; [3] and (4) reasonable attorney's fees and costs of the action. 29 U.S.C. § 1132(g)(2); *Iron Workers,* 68 F.3d at 1507; *Local 306, United Ass'n. Health & Welfare Fund v. Am. Testing & Inspection, Inc.,* 1988 WL 134942, at *1 (D.D.C. Nov.30, 1988). The unpaid contributions, interest, and liquidated damages generally are considered "sums certain" pursuant to the calculations mandated in ERISA and the parties' agreements. *Combs v. Coal & Mineral Mgmt. Servs., Inc.,* 105 F.R.D. 472, 474 (D.D.C.1984). The amount of attorney's fees, however, is not considered a sum certain as the "reasonableness of the fees requested by the [plaintiff] is a 'judgment call' which only the [c]ourt can make." *Id.* at 475.

■ Finally, ERISA authorizes the court to provide for other legal or equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2)(E). This relief can include an injunction requiring a defendant to permit, and cooperate with, an audit of its books and records. *Mason Tenders Dist. Council Welfare Fund v. Bold Constr. Co.,* 2002 WL 1788024, at *3 (S.D.N.Y. Aug.1, 2002).

### B. The Court Grants in Part and Denies in Part the Plaintiffs' Motion for Default Judgment

The defendants have failed to answer or otherwise defend this action. Consequently, the clerk of the court entered default, pursuant to Rule 55. The plaintiff now moves the court to grant a default judgment. In its motion the plaintiff asks for two types of damages, monetary and injunctive. Mot. for Default J. ¶¶ 1–9. The plaintiff supports its request with declarations and documentary evidence.

#### 1) The Plaintiff's Request for Monetary Damages

■ Requesting monetary damages, the plaintiff details unpaid Pension Fund contributions, interest on the unpaid contributions, liquidated damages, late charges, and attorney's fees. In requesting unpaid Pension Fund contributions, the plaintiff presents two categories: (1) claims for contributions not covered by the settlement (regarding unpaid contributions) notarized on July 3, 2001 and (2) claims for contributions covered by the July 3, 2001 settlement. First, the plaintiff's claim for $1,919.30 for unpaid pension contributions not covered by the July 3, 2001 settlement is based on the defendants' remittance reports submitted for November 2001 through January 2002 and the plaintiff's

---

**2.** The interest is calculated using the rate set forth in the agreement existing between the parties, or, if there is none, using the rate prescribed in 26 U.S.C. § 6621. 29 U.S.C. § 1132(g)(2)(B).

**3.** Liquidated damages may not be greater than 20 percent of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C)(ii).

estimates for money owed for February through April 2002. Montemore Decl. ¶¶ 7–8. As these calculations appear accurate, the court grants this request. 29 U.S.C. § 1132(g)(2)(A); *Combs*, 105 F.R.D. at 474.

Regarding the October 2000 through March 2001 contributions addressed in the July 3, 2001 settlement agreement, the court grants the plaintiff's request only in part. The plaintiff requests the "principal balance" of the settlement: $10,854.86. Mot. for Default J. ¶ 1. According to the plaintiff's evidence, however, the principal balance of $10,854.86 includes unpaid Pension Fund contributions of $9,461.20 as well as interest on these unpaid contributions. Montemore Decl. ¶ 6. Because the plaintiff requests interest on unpaid contributions pursuant to Section 1132(g)(2)(B) in a different paragraph of its motion, the court will not here grant the portion of the principal balance that represents interest fees—that would result in awarding interest twice on the same base amount. Rather, the court will address interest separately. Concluding this review of the unpaid Pension Fund contributions, the court determines that the defendants owe the plaintiff $9,461.20 in unpaid contributions relating to the settlement agreement in addition to the $1,919.30 for unpaid contributions not covered by the settlement agreement. 29 U.S.C. § 1132(g)(2)(A); *Iron Workers*, 68 F.3d at 1507. Thus, the unpaid contributions total $11,380.50, rather than the $12,774.16 requested by the plaintiff. Mot. for Default J. ¶¶ 1–3.

Turning to interest on the unpaid contributions, the plaintiff requests $259.29 representing the interest on the aforementioned unpaid contributions totaling $12,774.16. Montemore Decl. ¶ 3. As the court decreased the award for unpaid contributions to $11,380.50, the court grants interest on this smaller amount only. 29 U.S.C. 1132(g)(2)(B); *Iron Workers*, 68 F.3d at 1507. As a result, the plaintiff must calculate the amount of interest due on $11,380.50 pursuant to ERISA and the Pension Fund's Rules and Regulations. 29 U.S.C. § 1132(g)(2)(B).

The plaintiff requests liquidated damages in the amount of $2,554.83, which represents 20% of the requested unpaid contribution amount. Montemore Decl. ¶ 4. Pursuant to ERISA and Section 8.05(b)(3) of the Pension Fund's Rules and Regulations, the plaintiff is entitled to liquidated damages in the amount of 20% of the unpaid contributions awarded by the court. *Id.*; 29 U.S.C. § 1132(g)(2)(C). Applying the reduced unpaid contributions amount of $11,380.50, the court calculates the liquidated damages amount as $2,276.10. *Id.*

The plaintiffs are also entitled to attorney's fees that the court determines are reasonable. 29 U.S.C. § 1132(g)(2)(D); *Combs*, 105 F.R.D. at 474. The plaintiff has supported its request for fees and costs totaling $2,962.99 with itemized billing statements. Sigmond Decl. dated Sept. 12, 2002; Mot. for Default J. Ex. 5. As the charges appear reasonable, the court grants the request for attorney's fees and costs.

▬ Deviating from the items listed in Section 1132(g)(2), the plaintiff requests late charges for contributions that the defendants paid after a deadline. Under ERISA, the court can order legal and equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2)(E). The plaintiff relies on this subsection for its request for late charges, though it provides no case law and few facts in support of this argument. Mot. for Default J. ¶ 5. As Section 1132(g)(2) addresses interest charges separately from legal and equitable relief, and interest charges are similar to but different from "late charges," the

court is not convinced that the legal and equitable relief clause should include late charges. Further, the plaintiff's declaration does not discuss how it calculated this amount. 29 U.S.C. § 1132(g)(2). Because the plaintiff has failed to provide sufficient legal or factual support, the court denies the request for late charges.

### 2) The Plaintiff's Request for Injunctive Relief

■ Having resolved the plaintiff's requests for monetary damages, the court now considers the request for injunctive relief. The plaintiff asks the court to order the defendants to (1) file complete and timely remittance reports with accompanying pension contributions for all periods covered by the collective bargaining agreements, and (2) file remittance reports for the months February through April 2002 and pay all required contributions based on such remittance reports. *Id.* ¶ 7. Finally, the plaintiffs ask the court to require the defendants to produce all records and books, relevant to ascertaining the liabilities and payments due to the Pension Fund, for the period from June 1999 to the date of the audit. *Id.* ¶ 8. This will enable certified public accountants retained by the plaintiff to perform an audit to determine whether the defendants owe additional amounts to the Pension Fund. *Id.* As these requests for injunctive relief promote the legislative intent of ERISA, the court grants this request. *Alco Express Co.,* 522 F.Supp. at 927–28; *see also Mason Tenders,* 2002 WL 1788024, at *3 (ordering the defendant to submit to an audit by the Pension Fund).

### IV. CONCLUSION

For all these reasons, the court grants in part and denies in part the plaintiffs' motion for default judgment. An Order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of December 2002.

### ORDER

##### GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this _____ day of December 2002, it is

**ORDERED** that the plaintiffs' motion for default judgment is **GRANTED in part** and **DENIED in part;** and it is

**FURTHER ORDERED** that the defendants shall pay to the plaintiffs the following:

1. $9,461.20 in unpaid pension fund contributions owed to the plaintiff as detailed in the settlement agreement notarized on July 3, 2001;

2. $1,919.30 for additional unpaid pension fund contributions;

3. interest on the $11,380.50 in unpaid pension fund contributions, calculated in accordance with the Pension Fund's Rules and Regulations;

4. $2,276.10 in liquidated damages; and

5. $2,962.99 in attorney's fees and costs; and it is

**ORDERED** that the defendants file complete and timely remittance reports with accompanying pension contributions for all periods for which the collective bargaining agreements require the defendants to do so; and it is

**FURTHER ORDERED** that within forty days from the date of this order the defendants file remittance reports for the months February through April 2002, listing by employee and social security number the hours worked for that month and

pay all required contributions based on such remittance reports; and it is

**ORDERED** that the defendants produce all records and books relevant to ascertaining liabilities and payments due to the Pension Fund, for the period from June 1999 to the date of the audit, to enable certified public accountants retained by the plaintiff to perform an audit.

**SO ORDERED.**